# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **OKECHUKWU MUMMEE AMADI** | : | **DOCKET NO. 2:06-cv-1138**<br>**Section P** |
| **VS.** | : | **JUDGE MINALDI** |
| **J. P.  YOUNG, ET AL.** | : | **MAGISTRATE JUDGE WILSON** |

## REPORT AND RECOMMENDATION

Currently before the court is a petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2241 by petitioner, Okechukwu Mummee Amadi.  This matter was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B).

Petitioner is under a final removal order, and he has been in post-removal-order detention since January 30, 2006.  In his petition, he challenges his post-removal-order detention as being indefinite and unconstitutional.  He claims that there is no significant likelihood of his being removed to Nigeria in the reasonably foreseeable future.

Based upon the evidence in the record, the undersigned determined that an evidentiary hearing was necessary for the adjudication of this *habeas corpus* petition.  An evidentiary hearing was held on January 30, 2007, and the evidence was limited to whether there is a significant likelihood of removing petitioner in the reasonably foreseeable future, whether the petitioner has been detained beyond what is reasonably necessary to secure his removal, and/or whether petitioner has taken steps to hamper the removal efforts of the United States Immigration & Customs Enforcement. [doc. 15].

## FACTUAL SUMMARY

The court will summarize the facts regarding petitioner and his detention as best it can from the evidence in the record and the testimony presented at the evidentiary hearing.

Petitioner is a native and citizen of Nigeria[1] who entered the United States at an unknown place and date without inspection.  *See* Doc. 12, Exhibit 1.

On November 6, 1995, petitioner was convicted in the United States District Court for the District of New Jersey of conspiracy to import more than one kilogram of heroin. *See* Doc. 12, Exhibit 2; *United States v. Amadi*, 94-cr-0573-01.  For this offense, petitioner was sentenced to 84 months imprisonment. *Id.*

Based upon his conviction, a Notice to Appear was issued to petitioner on August 29, 2000, charging him with being subject to removal under INA § § 212(a)(2)(A)(i)(II), 212(a)(2)(C), and 212(a)(6)(A)(i), for controlled substance violation and trafficking and for entering the United States without inspection, respectively.   *See* Doc. 12, Exhibit 3.  Petitioner was released from custody by the Bureau of Prisons on December 8, 2000 and taken into immigration custody on that same date.  *See* Doc. 12, Exhibit 14.

On January 5, 2001, an immigration judge found petitioner to be removable as charged  and denied his claim for relief under the Convention Against Torture (CAT).  He ordered petitioner removed from the United States to the United Kingdom or to Nigeria, in the alternative.  *See* Doc. 12, Exhibit 4.  Petitioner appealed this decision to the Board of Immigration Appeals (BIA). On September 13, 2001, the BIA affirmed the decision of the immigration judge. *See* Doc. 12, Exhibit 5.

---

[1]In the Notice to Appear, it is alleged that petitioner is a native and citizen of Nigeria, and it appears as if he admitted this factual allegation. *See* Doc. 12, Exhibit 3, p.1.

2

On October 30, 2001, petitioner filed a *habeas corpus* petition challenging his removal order in the United States District Court for the Eastern District of New York. *See* Doc. 12, Exhibit 6; *Amadi v. Ashcroft*, 01-cv-7354 (EDNY). This court issued an order staying petitioner's removal on November 4, 2001. On July 8, 2003, the petition was denied, and the stay was vacated. *Id.* Petitioner appealed this decision to the U.S. Court of Appeals for Second Circuit, and on June 7, 2004, the Second Circuit issued a stay of removal. *Id.,* Exhibit 7; *Amadi v. Ashcroft*, 03-2573 (2nd Cir.). On December 15, 2004, the Second Circuit granted the government's motion to remand and issued an order vacating the district court's decision and remanding the matter to the district court with instructions to remand the matter to the BIA for further proceedings regarding petitioner's CAT claim. *See* Doc. 12, Exhibits 7 & 9. By order dated March 18, 2005, the U.S. District Court for the EDNY remanded petitioner's case to the BIA for further proceedings. *See* Doc. 12, Exhibit 10. In turn, on July 20, 2005 the BIA remanded the matter to the immigration for further factual development of the record regarding petitioner's claim for relief under the CAT. *See* Doc. 12, Exhibit 11.

On October 7, 2005, the immigration judge ordered petitioner removed from the United States to the United Kingdom or, in the alternative, to Nigeria. *See* Doc. 12, Exhibit 12. Petitioner appealed to the BIA, and on January 30, 2006, the BIA dismissed the appeal. *See* Doc. 12, Exhibit 13. At this point, petitioner's removal order became administratively final.

Following petitioner's initial removal order, requests were made to the Nigerian Embassy for travel documents for petitioner. *See* Doc. 12, Exhibits 15 & 16. On May 19, 2004, an Emergency Travel Certificate was issued by the Nigerian Embassy. *See* Doc. 12, Exhibit 17. However, because of petitioner's appeal which was pending in the Second Circuit and his request for a stay of removal,

the travel document could not be used before its expiration date.

In addition to litigating his removal order, in 2004 petitioner filed a federal civil rights action in New Jersey related to an eye injury allegedly suffered as a result of receiving improper medication while incarcerated. *See Amadi v. FCI Fort Dix Health Services, et al.*, 04-2712 (DNJ). Petitioner apparently notified the Nigerian Embassy of his pending litigation, and by letter dated August 13, 2004, the Nigerian Embassy informed petitioner that the Consulate would not issue a travel document for him until he received "appropriate treatment for the eye." *See* Doc. 12, Exhibit 19. This case is still pending. In addition to the New Jersey civil action, the petitioner has filed several other civil matters since his removal order became administratively final, some of which remain pending.[2]

_____

[2]In addition to directly challenging his removal order, the petitioner has filed the following civil actions:

1. A civil action related to his eye injury in the U.S. District Court for the District of New Jersey, *Amadi v. FCI Fort Dix Health Services, et al.*, 1:04-cv-2712 (D. N.J.); this action is still pending;

2. A civil action related to the loss of property in the U.S. District Court for the Northern District of New York. *Amadi v. United States of America*, 9:02-cv-1383 (NDNY); this case was transferred to the U.S. District Court for the District of New Jersey, *Amadi v. United States of America*, 2:04-cv-1091 (D.N.J.); this case was closed on August 17, 2004 when the court granted the government's motion for summary judgment.

3. A Motion to Vacate under 28 U.S.C. § 2255 in the U.S. District Court for the District of New Jersey, *Amadi v. United States of America*, 2:06-2505 (D.N.J.); this case was closed on July 21, 2006.

4. A petition for Writ of Coram Nobis filed in the U.S. District Court for the District of New Jersey, *Amadi v. United States*, 3:06-cv-4139 (N.D.J.); this case was closed on September 11, 2006, upon the finding that petitioner had failed to establish that a fundamental error occurred.

5. A second petition for Writ of Coram Nobis filed in the U.S. District Court for the District of New Jersey, *Amadi v. United States*, 3:06-cv-5297 (N.D.J.); this case was closed on November 30, 2006, upon the finding that petitioner had failed to establish that a fundamental error occurred.

6. A Tort Claim under 28 U.S.C. § 1346, et seq., related to the loss of property during a transfer, in the United States District Court for the District of Columbia, *Amadi v. Department of Homeland Security*, 1:06-cv-1999 (DDC); this action is still pending.

7. A civil rights action filed in the U.S. District Court for the Northern District of Alabama, *Amadi v. Robinson*, 4:04-cv-1251 (ND Ala.), this action was transferred to the U.S. District Corut for the Western District of Louisiana where it was received and filed on October 5, 2006, *Amadi v. Robinson*, 2:06-cv-1833 (W.D. La.)

Thus, it appears that in addition to the instant *habeas corpus* matter, petitioner still has three civil actions pending in various courts: (1) *Amadi v. FCI Fort Dix Health Services, et al.*, 1:04-cv-2712 (D. N.J.); (2) *Amadi v. Department of Homeland Security*, 1:06-cv-1999 (DDC); and *Amadi v. Robinson*, 2:06-cv-1833 (W.D. La.).

On May 10, 2006 a telephonic interview was conducted between petitioner and the Nigerian Consulate. *See* Doc. 12, Exhibit 21, p.4.  During this interview, petitioner informed the Consulate that his father informed him that he was not born in Nigeria, but in a Spanish country. *Id.*, p.7.  By letters dated July 6, 2006, petitioner wrote to ICE, the Nigerian Consul, and the Nigerian Embassy, informing them that he is not a Nigerian citizen by birth as he was born in Equatorial Guinea. *See* Doc. 14-2, pp. 5-12.

On June 2, 2006, ICE issued a Decision to Continue Detention.  *See* Doc. 12, Exhibit 20. The Post Order Custody Review conducted in petitioner's case prior to ICE's decision notes that Nigeria has issued travel documents for petitioner on two occasions, in 1990 and in 2004.  It was also noted on the review worksheet that petitioner has made no attempt to obtain a travel document for his removal and has instead sought out means to prevent it, including requesting stays and providing information to the Nigerian Embassy which calls into question his Nigerian citizenship.  *See* Doc. 12, Exhibit 20 & 21.

At the hearing on January 30, 2007, petitioner's deportation officer, Mr. Firmin, testified that following the telephonic interview in May, 2006, the Consulate indicated that it was not ready to issue a travel document because of petitioner's pending litigation.  Petitioner testified that he has not requested a travel document from Nigeria because it is the policy of Nigeria not to issue travel documents while the alien is involved in pending litigation.

In light of this testimony and the other evidence in the record, the government argues that petitioner's removal has not yet occurred because of his pending litigation and requests for stays. The government contends that there is a significant likelihood that petitioner's removal will occur in the reasonably foreseeable future once petitioner's pending matters are resolved.

5

## LAW AND ANALYSIS

The issue before the court is whether petitioner's prolonged post-removal-order detention is lawful.  The government argues that petitioner's detention is lawful and that petitioner's removal has been delayed because of his court proceedings.

Following an order of removal, the Attorney General is given 90 days to effect the removal of the alien. INA § 241(a)(1).  This 90-day period of time is referred to as the removal period.  During this removal period, the alien is subject to detention.  INA § 241(a)(2).  If the alien is not removed during the removal period, the alien is generally released to supervision. INA § 241(a)(3).

Detention can be extended beyond the 90 day removal period in limited circumstances. INA § 241(a)(6) authorizes the continued detention of certain inadmissible or criminal aliens, such as petitioner, if the Attorney General determines that the alien is a risk to the community or unlikely to comply with the order of removal.  Because the Supreme Court concluded that indefinite detention of aliens under the circumstances set forth in § 241(a)(6) would raise serious constitutional concerns, it construed the statute to contain an implicit "reasonable time" limitation. *Zadvydas v. Davis*, 121 S.Ct. 2491, 2495 (2001).   The Supreme Court held that in order to be constitutional, detention pursuant to INA §241(a)(6) must be limited to a period of the time reasonably necessary to bring about the alien's removal. *Zadvydas,* 121 S.Ct. at 2498.  The Supreme Court went on to recognize six months as a presumptively reasonable period of detention following a final order of removal.  *Zadvydas*, 121 S.Ct. at 2504.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut this showing.  And for the detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in

6

confinement until it has been determined that there is no significant likelihood of
removal in the reasonably foreseeable future.
*Zadvydas,* 121 S.Ct. 2505.

Additionally, an alien may be detained beyond the 90 day removal period pursuant to the

statutory authority of INA § 241(a)(1)(C).[3]  This statute provides for the suspension of the removal

period whenever an alien acts in a manner to prevent his removal.  This statute, like § 241(a)(6), does

not contain an express limitation on the length of time that an alien may be detained.  However, as

the Ninth Circuit has observed, INA § 241(a)(1)(C) does not present the same constitutional concerns

raised by INA § 241(a)(6) because "the risk of indefinite detention that motivated the Supreme

Court's statutory interpretation in *Zadvydas* does not exist when an alien is the cause of his own

detention." *Pelich v. Immigration and Naturalization Service*, 329 F.3d 1057, 1060 (9th Cir. 2003).

Thus, an alien cannot assert a viable constitutional challenge to his indefinite detention when such

detention is due to own actions. *Id.* at 1061.

In *Andrade v. Gonzales,* 459 F.3d 538 (5th cir. 2006), the Fifth Circuit reiterated that the

Supreme Court's holding in *Zadvydas* "creates no specific limits on detention"; that "'an alien may

be held in confinement until it has been determined that there is no significant likelihood of removal

in the reasonably foreseeable future.'"; and that "[t]he alien bears the initial burden of proof in

showing that no such likelihood of removal exists."  *Andrade*, 459 F.3d at 543, quoting *Zadvydas*,

121 S.Ct. at 2505.  In that case, Andrade "offered nothing beyond his conclusory statements

suggesting that he [would] not be immediately removed to Cape Verde following the resolution of

his appeals," and the Fifth Circuit found his constitutional challenge to his detention to be without

---

[3] **(C) Suspension of period**
      The removal period shall be extended beyond a period of 90 days and the alien may remain
in detention during such extended period if the alien fails or refuses to make timely application in
good faith for travel or other documents necessary to the alien's departure or conspires or acts to
prevent the alien's removal subject to an order of removal.

merit.  *Andrade,* 459 F.3d at 543-544.

In this case, the facts before the court establish that petitioner has been in post-removal-order detention since January 30, 2006, a period greater than six months.   However, there is significant evidence in the record that, unlike the detainees in *Zadvydas*, petitioner's detention is not potentially permanent and that petitioner is responsible for his own plight.   The evidence before the court establishes that Nigeria has issued travel documents for petitioner on two prior occasions and that it is merely awaiting petitioner's exhaustion of all judicial remedies before it does so this time. While petitioner has a legal right to seek judicial relief, it is apparent that the appeals of his removal order, the requests for stays of removal, and his pending civil litigation have hampered the ability of ICE to deport petitioner.   The Court finds that petitioner's testimony and documentary evidence demonstrate that petitioner is aware of Nigeria's policy regarding the issuance of a travel document during the pendency of litigation and that he has taken advantage of this policy to avoid deportation by seeking judicial relief and notifying the Nigerian Embassy of his pending litigation.   Accordingly, the court finds that because petitioner's continuing litigation is the cause of his continued detention, he cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future.   Once petitioner's legal proceedings are concluded, it is likely that he will be removed to Nigeria.

Accordingly,

IT IS RECOMMENDED that the petition for writ of *habeas corpus* be DENIED and DISMISSED.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.   Timely

objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

**THUS DONE AND SIGNED** in Chambers at Lake Charles, Louisiana, February 12, 2007.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE

9